_____



**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: April 12, 2018**

**The Order of the Court is set forth below. The docket reflects the date entered.**
_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **DENNIS WAYNE CAIN,** | **CASE NO. 17-00046-NPO** |
| **DEBTOR.** | **CHAPTER 13** |
| **DENNIS WAYNE CAIN** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 17-00060-NPO** |
| **UNITED CREDIT CORP OF BROOKHAVEN** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER ON DEFENDANT UNITED CREDIT CORP OF BROOKHAVEN'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY CLAIMS PENDING ARBITRATION

This matter came before the Court for hearing on January 12, 2018 (the "Hearing"), on the Defendant United Credit Corp of Brookhaven's Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration (the "Motion to Compel Arbitration or Stay Claims") (Adv. Dkt. 6)[1] filed by United Credit Corp of Brookhaven ("United Credit"); the Defendant United Credit Corp of Brookhaven's Memorandum in Support of Motion to Compel Arbitration and to Dismiss

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. __)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. __)".

or Stay Claims Pending Arbitration ("United Credit's Brief") (Adv. Dkt. 7) filed by United Credit; the Response to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration (the "Debtor's Response") (Adv. Dkt. 10) filed by the debtor, Dennis Wayne Cain (the "Debtor"); the Memorandum Brief in Support of Plaintiff's Response to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration (Adv. Dkt. 11) filed by the Debtor; the Defendant United Credit Corp of Brookhaven's Reply to Debtor's Response to Motion to Compel Arbitration ("United Credit's Reply") (Adv. Dkt. 12) filed by United Credit; the Supplemental Brief in Support of Plaintiff's Response to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration (the "Debtor's Supplemental Brief") (Adv. Dkt. 17) filed by the Debtor; and the Defendant United Credit Corp of Brookhaven's Reply to Debtor's Supplemental Brief in Support of Plaintiff's Response to Motion to Compel Arbitration and to Dismiss or Stay Claims Pending Arbitration [*AP DKT. #17*] ("United Credit's Supplemental Brief") (Adv. Dkt. 18) filed by United Credit in the Adversary. At the Hearing, Bryce Kunz represented the Debtor, and Adam Stone represented United Credit. During the Hearing, the Debtor and United Credit (collectively, the "Parties") introduced into evidence one (1) stipulated exhibit. The issues in the Adversary are: (1) whether the Parties formed an agreement to arbitrate, (2) whether the arbitration agreement actually contains a delegation clause requiring the Parties' claims to proceed to arbitration, and (3) whether compelling arbitration presents an inherent conflict between the Federal Arbitration Act ("FAA") and the purposes of the Bankruptcy Code (the "Code"). The Court, having considered the pleadings, evidence, and arguments of counsel, finds as follows:[2]

---

[2] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

**Jurisdiction**

This Court has jurisdiction over the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. For the reasons discussed later in the Opinion, this is a non-core proceeding. Notice of the Motion to Compel Arbitration or Stay Claims was proper under the circumstances.

**Facts**

1. On June 3, 2016, the Debtor entered into the Mississippi Disclosure Statement, Promissory Note and Security Agreement (the "Loan Agreement") with United Credit (Ex. 1). The Debtor financed $2,087.18 with a 42.41% annual rate of interest to be paid in eighteen (18) equal installments of $160.00 for a total payment to United Credit of $2,880.00. (*Id.*) Additionally, the Debtor obtained from United Credit credit life insurance at $70.00, credit disability insurance at $109.44, and credit property insurance at $131.25. (*Id.*)

2. The Loan Agreement consists of two (2) pages. The Debtor's signature appears at the bottom of the first page.

3. The Arbitration Agreement (the "Arbitration Agreement") consists of two (2) pages and follows the Loan Agreement. (Ex. 1). The Arbitration Agreement covers "claims relating to [the Loan Agreement]." (*Id.*)

4. In United Credit's Brief, United Credit asserts that the Arbitration Agreement contains a delegation clause.

5. On January 5, 2017, the Debtor filed a petition for relief under chapter 13 of the Code. (Bankr. Dkt. 1).

6. On October 13, 2017, the Debtor filed the Complaint (the "Complaint") in this Adversary alleging that United Credit violated the Truth in Lending Act ("TILA"), 15 U.S.C.

§ 1601 *et seq.*, and Regulation Z by providing misleading and incorrect disclosures on the Loan Agreement (Adv. Dkt. 1 at 5-6). For example, the Debtor alleges that United Credit did not pay to the appropriate insurance company the amounts required for the Debtor's life insurance, disability insurance, and property insurance (Adv. Dkt. 1 at 3-4, ¶¶ 16-18). The Debtor further asserts that United Credit "received and/or retained an undisclosed portion of the funds." (*Id.* ¶ 19).

7. On November 15, 2017, United Credit filed the Answer and Affirmative Defenses to Complaint [Adv. Proc. Dkt. #1] (Adv. Dkt. 5), denying that it violated the TILA and demanding "a jury trial on all of the claims raised in the Adversary Proceeding Complaint." (*Id.*)

8. On November 16, 2017, United Credit filed the Motion to Compel Arbitration or Stay Claims. In support of compelling arbitration, United Credit asserts that the Debtor signed both the Loan Agreement and the Arbitration Agreement and thus "specifically agree[d] to be bound by its terms." (Adv. Dkt. 6).

9. On December 12, 2017, the Debtor filed the Debtor's Response. In support of litigation, the Debtor asserts that compelling arbitration would conflict with the principles of the Code. (Adv. Dkt. 10).

10. On December 27, 2017, United Credit filed United Credit's Reply asserting that the Code does not conflict with the FAA. (Adv. Dkt. 12). United Credit stipulated "that it is not seeking attorneys' fees and will pay the arbitration filing fee." (*Id.*)

11. At the Hearing, the Parties presented to the Court the Loan Agreement and the Arbitration Agreement. (Ex. 1).

12. To provide United Credit an opportunity to respond to new arguments and authorities raised by the Debtor at the Hearing, the Court instructed the Debtor to file a

supplemental brief on or before January 26, 2018 and directed United Credit to file its responsive brief within fourteen (14) days after the filing of the Debtor's supplemental brief. The Parties filed the briefs accordingly. (Adv. Dkt. 17 & 18).

13. On January 25, 2018, the Debtor filed the Debtor's Supplemental Brief, asserting that "[t]here is an inherent conflict between the [Code's] ability to alter pre-petition contracts and the seeming inability to alter pre-petition arbitration agreements[,]" and that "[t]he core/non-core distinction is not dispositive, and there may be a question of whether or not this particular matter is core or non-core." (Adv. Dkt. 17).

14. On February 9, 2018, United Credit filed United Credit's Supplemental Brief, asserting that the Debtor's claims are non-core and that the FAA does not conflict with the Code. (Adv. Dkt. 18).

## Discussion

The Supreme Court of the United States has long acknowledged "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Indeed, the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. With this policy in mind, however, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Thus, the enforcement of an arbitration agreement is a matter of both contract formation and contract interpretation. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The Fifth Circuit Court of Appeals has established a two-prong test for courts to follow when ruling on a motion to compel arbitration: (1) "whether the parties entered into *any arbitration agreement at all*" and (2) "whether *this* claim is covered by the arbitration agreement." *Id.* When an "arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim . . . the court's power to decide arbitrability questions [transfers] to the arbitrator." *Id.* at 201-02. In other words, "a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* at 202; *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). When a "party seeking arbitration points to a purported delegation clause," the court limits its analysis to that of contract formation and answers only the question of whether the parties entered into an agreement to arbitrate some set of claims. *Kubala*, 830 F.3d at 202. If the court finds both a valid agreement to arbitrate and a delegation clause within that agreement, "the motion to compel arbitration should be granted in almost all cases." *Id.*

Here, United Credit contends that the Arbitration Agreement contains a valid and enforceable delegation clause (Adv. Dkt. 6 & 7). As a result, the Court will address whether the Parties entered into a valid agreement to arbitrate "some set of claims" and, if so, whether that agreement contains a delegation clause requiring the Parties' claims to proceed to arbitration "for gateway rulings on threshold arbitrability issues." *Kubala*, 830 F.3d at 202.

**A.     Did the Parties enter into a valid agreement to arbitrate a set of claims?**

The "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Fleetwood Enters., Inc. v. Gaskamp*,

280 F.3d 1069, 1073 (5th Cir. 2002); *see also Volt Info. Scis., Inc.*, 489 U.S. at 478 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so."). Instead, state contract law determines whether parties entered into a valid agreement to arbitrate a set of claims. *Kubala*, 830 F.3d at 202. Since the Loan Agreement notes that it is specific to Mississippi and the Parties directed the Court to Mississippi law in their pleadings and at the Hearing, the Court will apply Mississippi law to determine whether the Parties entered into a valid agreement to arbitrate their claims.

Under Mississippi law, "[t]he elements of a valid contract are: '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003) (quoting *Lanier v. State*, 635 So. 2d 813, 826 (Miss. 1994)). The Court will address each element in turn.

First, the Arbitration Agreement is between two or more parties—the Debtor and United Credit.[3] Second, the Arbitration Agreement is supported by the consideration of mutual promises to arbitrate,[4] the Debtor's promise to pay the amount owed to United Credit under the Loan Agreement, and United Credit's extension of a loan to the Debtor.[5] *See McKenzie Check Advance*

---

[3] The Arbitration Agreement refers to the parties as "us" or "we" and "you," and its signatories are the lender and the borrower or United Credit and the Debtor, respectively. (Ex. 1).

[4] The Arbitration Agreement provides, "Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us." (Ex. 1).

[5] The Loan Agreement provides, "FOR VALUE RECEIVED the [Debtor] . . . promise[s] to pay to the order of [United Credit] at its above address the Total of Payments above stated. . . . Payment hereon shall be made in consecutive monthly installments, in the number and amounts set forth above, beginning on the first payment date and continuing thereafter on the same day of each succeeding month to and including the final payment due date shown above." (Ex. 1).

*of Miss., LLC v. Hardy*, 866 So. 2d 446, 453 (Miss. 2004) (holding that mutual promises to arbitrate claims constitute sufficient consideration and stating that "mutuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration"). Third, the Arbitration Agreement is in writing, and its terms are sufficiently definite. A contract is sufficiently definite when it contains enough information to "enable the court under proper rules of construction to ascertain its terms." *Hunt v. Coker*, 741 So. 2d 1011, 1014 (Miss. 1999) (quoting *Leach v. Tingle*, 586 So. 2d 799, 802 (Miss. 1991)). Here, the Arbitration Agreement defines the parties, explains which claims are subject to arbitration, provides the procedure for satisfying the costs of arbitration, and establishes the location for the arbitration. Additionally, the FAA governs the Arbitration Agreement. Fourth, the Court has no reason to believe that the Debtor is not a legally competent adult with the capacity to bring suit and the capacity to contract. Fifth, the Debtor's signature and/or initials on the Loan Agreement and the Arbitration Agreement and United Credit's signature on the last page of the Arbitration Agreement evidences the Parties' mutual assent. Sixth, "Mississippi follows the federal policy favoring arbitration" and does not prohibit parties from arbitrating consumer contracts. *Citibank, N.A. v. Stovall*, 211 So. 3d 700, 701 (Miss. 2016). Accordingly, the Court finds that the Debtor and United Credit formed a valid contract to arbitrate their claims.

**B.     Does the Arbitration Agreement contain a delegation clause requiring the Parties' claims to proceed to arbitration?**

In the Motion to Compel Arbitration or Stay Claims and in United Credit's Brief, United Credit asserts that "[t]he Arbitration Agreement contains a delegation clause, which delegates all questions of arbitrability to the arbitrator." (Adv. Dkt. 6 at 2 & Adv. Dkt. 7). When an agreement contains a valid delegation clause, the court, absent an exceptional circumstance, must "refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830

F.3d at 202. A delegation clause "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* Here, the Arbitration Agreement provides,

> Except as specifically provided herein, all Claims between you and us are subject to arbitration. Claims which are subject to this Arbitration Agreement include, but are not limited to, Claims relating to your loan with us, any prior loans or retail installment contracts between you and us, any insurance purchased in connection with any loan or retail installment contract between you and us, any negotiations or discussions between us, all claims or disputes based upon Federal or State laws or regulations, class action types of claims and consolidated claims,claims [*sic*] or disputes involving or alleging breach of contract, breach of fiduciary duty, breach of duty of good faith and/or fair dealing, fraud, fraud in the inducement, misrepresentation, unfair or deceptive trade practices, or our relationship. *Claims regarding the application, enforceability, or interpretation of this Arbitration Agreement are also subject to arbitration*. All Claims are subject to arbitration, no matter what legal theory they are based on, or what remedy (damages, or injunctive or declaratory relief) they seek, the method in which the Claim is asserted, or the timing in which the Claim is made.

(Ex. 1) (emphasis added). Accordingly, the Court finds that the Arbitration Agreement contains a valid delegation clause because "the parties agreed that the arbitrator and not the court should be the decisionmaker on whether a given claim is arbitrable." *Kubala*, 830 F.3d at 204. The Court reaches this finding even though the Debtor argued at the Hearing that granting the Motion to Compel Arbitration or Stay Claims would present an inherent conflict between the FAA and the Code. The Court will now address the Debtor's argument.

A "bankruptcy court has discretion to deny enforcement of the arbitration clause only when enforcement would conflict with the purpose or provisions of the Code." *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 498 (5th Cir. 2002). Importantly, however, "a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b)." *In re Gandy*, 299 F.3d at 495; *see also In re Shores of Panama, Inc.*, 387 B.R. 864, 865 (Bankr. N.D. Fla. 2008) ("If the proceeding is non-core, the bankruptcy court has no discretion and must compel arbitration."). Thus, the first step in

addressing whether arbitration conflicts with the Code is to determine whether the Debtor's claims are "core" or "noncore" proceedings.

A core proceeding is one that "arises under" or "arises in" a case under title 11. 28 U.S.C. § 1334(b). More specifically, "[p]roceedings 'arise under' title 11 if they involve a 'cause of action created or determined by a statutory provision of the Bankruptcy Code.'" *Buckingham v. Baptist Memorial Hospital-Golden Triangle, Inc.*, 283 B.R. 691, 693 (N.D. Miss. 2002) (quoting *In re Goldstein*, 201 B.R. 1, 4-5 (Bankr. D. Me. 1996)). Additionally, "[p]roceedings 'arising in' a bankruptcy case 'are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy.'" *Id.* In a core proceeding, a bankruptcy court may refuse to enforce an otherwise applicable arbitration agreement only if enforcement of the agreement would conflict with the purpose or provisions of the Code. *Ins. Co. of N. Am. v. NCG Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1069-70 (5th Cir. 1997). That is, in a core proceeding, a bankruptcy court has discretion to override an arbitration agreement only if "it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the [Federal] Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (quoting *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999)); *In re Mirant Corp.*, 316 B.R. 234 (Bankr. N.D. Tex. 2004).

A non-core proceeding is a matter that would exist outside of the bankruptcy, but is "related to" a bankruptcy case. 28 U.S.C. § 1334(b). More specifically, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and

administration of the bankrupt estate." *Buckingham*, 283 B.R. at 693 (quoting *In re Goldstein*, 201 B.R. at 4-5)).

In the Complaint, the Debtor asserts that the Adversary is a core proceeding under 28 U.S.C. § 157(b)(2)(C) and/or § 157(b)(2)(O) and alleges that United Credit violated the TILA. Despite this assertion, the Debtor later "d[id] not dispute that his lawsuit is predicated on so-called 'non-core' claims, but the mechanism allowing for him to bring his claim, is all due to this bankruptcy specific adversary proceeding process." (Adv. Dkt. 11). In the Debtor's Supplemental Brief, however, the Debtor retracted his assertion that the Adversary is a non-core proceeding because "[a]t least one [c]ourt has found that TILA claims are core." (Adv. Dkt. 17).

In *Larocque v. CitiFinancial Mortg. Co. (In re Larocque)*, 283 B.R. 640 (Bankr. D.R.I. 2002), the debtor sought to enforce an extended right of rescission under the TILA and to obtain a ruling from the bankruptcy court that the creditor's mortgage on the debtor's home is void. *In re Larocque*, 283 B.R. at 641. In response, the creditor asked the bankruptcy court to compel arbitration of the TILA claim. Additionally, the creditor asserted that the TILA claim was non-core. The bankruptcy court delayed confirmation of the debtor's plan until resolution of the dispute. With respect to the TILA claim, the bankruptcy court found that "the resolution of the TILA issue will clearly affect the [d]ebtor, as well as the plan he will be able to propose, and ultimately creditors." *Id.* at 642. More specifically, the bankruptcy court found that "the resolution of this dispute will establish whether [the creditor] is a secured or unsecured creditor in the bankruptcy case, thereby affecting how creditors will share in the [d]ebtor's assets, and in what priority." *Id.* As a result, the bankruptcy court held that the adversary proceeding was a core matter and denied the creditor's motion to compel arbitration.

In United Credit's Supplemental Brief, United Credit argues that *In re Larocque* is factually distinguishable from the Adversary because "[n]o creditors are being prejudiced by any delays in the adjudication of the Debtor's claims." (Adv. Dkt. 18). On February 8, 2017, the Debtor filed the Motion to Avoid Nonpossessory, Nonpurchase, Money Security Interest to avoid United Credit's security interest in the Debtor's personal and household goods that have been claimed exempt in the Bankruptcy Case. (Bankr. Dkt. 36). On March 8, 2017, the Court issued the Order avoiding United Credit's nonpossessory, nonpurchase money security interest in the Debtor's household goods and personal goods. (Bankr. Dkt. 59). Additionally, on February 10, 2017, the Debtor filed the Objection to Proof of Claim, requesting that the Court allow United Credit's claim in the amount of $2,264.45 as an unsecured claim. (Bankr. Dkt. 39). On April 5, 2017, the Court issued the Order sustaining the Debtor's Objection to Proof of Claim and allowing United Credit's claim as unsecured. (Bankr. Dkt. 72). Finally, on April 10, 2017, the Court issued the Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders. (Bankr. Dkt. 75).

After fully considering the matter, the Court agrees with United Credit that *In re Larocque* is factually distinguishable from the Adversary. Unlike in *In re Larocque*, the Court has determined already that United Credit is an unsecured creditor and confirmed the Debtor's chapter 13 plan. Thus, the Debtor's claims "do not depend on provisions in the Bankruptcy Code for their existence [but] [r]ather, they are 'non-core' or 'related' proceedings that would not be in this court but for the filing of the [Bankruptcy Case]." *First Franklin Corp. v. Barkley (In re Anthony)*, 334 B.R. 780, 787 (Bankr. N.D. Miss. 2005). Accordingly, the Court finds that the Adversary is a non-core proceeding.

In the Debtor's Supplemental Brief, the Debtor asserts that "[t]he core/non-core analysis is helpful in identifying conflicts, but shouldn't be the end of the analysis about validity of an arbitration agreement in bankruptcy." (Adv. Dkt. 17 at 3). To support this assertion, the Debtor makes the following arguments: (1) the Debtor "does not have the same background financially as the debtors in Chapter 11 cases which predominately make up the 5th Circuit law"; (2) the outcome of the Adversary will directly impact the validity of United Credit's proof of claim and amount to be paid; (3) the Debtor and United Credit would have to travel to a new forum to resolve a mere "application of the law" issue already before the Court; and (4) "this Court's ability to enforce its orders relating to assets of the estate, the discharge, the viability of the plan, the credibility of this proof of claim, and gaining assets for other unsecured creditors are all implicated through this [A]dversary." (Adv. Dkt. 17 at 3-4). In response, United Credit asserts that "[t]he Fifth Circuit has never held that arbitration agreements are invalid in a consumer, Chapter 13 context"; the Debtor objected to United Credit's proof of claim in the Bankruptcy Case, not in the Adversary, and the Court issued an order allowing United Credit's proof of claim as an unsecured claim; and "[c]ompelling arbitration does not affect the Court's ability to enforce its orders relating to assets of the [e]state." (Adv. Dkt. 18).

It is well-settled in the Fifth Circuit that:

> [W]here the cause of action at issue is not derivative of the pre-petition legal or equitable rights possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code, a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.

*In re Nat'l Gypsum Co.*, 118 F.3d at 1069. With regard to "derivative, non-core matters," however, it is "universally accepted" that such issues are arbitrable. *Id.* at 1066; *see Hays & Co. v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1159 (3d Cir. 1989).  Here, the Court has confirmed the Debtor's chapter 13 plan and determined that United Credit is an unsecured creditor.  All that remains to be decided between the Parties is whether United Credit is liable to the Debtor under the TILA.  Depending on the outcome of the arbitration, the Debtor may amend his chapter 13 plan so that it accurately reflects the arbitrator's decision.  Accordingly, and consistent with this Court's recent decision in *Griffin v. Country Credit, LLC (In re Griffin)*, Adv. Proc. 17-00048-NPO, 2018 WL 1268466 (Bankr. S.D. Miss. Mar. 9, 2018), the Court finds that it does not have discretion to refuse to compel arbitration of this non-core matter.[6]  *See In re Gandy*, 299 F.3d at 495.

## Conclusion

For the above and foregoing reasons, the Court concludes that the Parties agreed to arbitrate their claims under Mississippi law.  Further, the Arbitration Agreement contains a valid delegation clause requiring the Debtor's claims to proceed to arbitration for the arbitrator to decide gateway arbitrability issues.  Finally, the Adversary is a non-core proceeding, and the Court does not have discretion to refuse to compel arbitration.

The Court further concludes that the Adversary should be stayed until further order of this Court for purposes of allowing arbitration to proceed and for entry of a final and binding decision or award, but not for entry of a judgment in any court of competent jurisdiction or for purposes of collection of any award that may be obtained by United Credit through the arbitration process.

---

[6] Even if the Adversary somehow did constitute a core proceeding, United Credit's assertion "that it is not seeking attorneys' fees and will pay the arbitration filing fee" alleviates the Debtor's concerns about the arbitration costs negatively impacting the Debtor's bankruptcy estate and interfering with his fresh start.  (Adv. Dkt. 12).

To the extent the Court has not addressed any of the Parties' other arguments or positions, it has considered them and determined they would not alter the result. A separate final judgment shall be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##